## Taylor v. Commonwealth.

Oct. 16, 1942.

626

Hines & Hines for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Reversing.

Appellant was convicted and sentenced to imprisonment for five years under an indictment charging him with carnal knowledge of one Ethelda Neace, a female less than 18 years of age (Ky. Stats., sec. 1155. Two witnesses, James Embry and wife, testified that the first of July, the wife fixing the day as Sunday, they were walking along a side road leading from Highway No. 71 in Butler County, and saw accused and the stepdaughter lying on the side of the road engaged in the act of sexual intercourse. The time was between three and four o'clock in the afternoon. Mrs. Embry turned away, and the husband says he coughed or cleared his throat and the parties got up. Both witnesses knew and easily recognized them. Another witness saw them lying on the ground, but could not say that they were engaged in the act.

Appellant testified that he did not at the time stated by witnesses, at the place mentioned, have intercourse

with the stepdaughter, and was positive that he had never at any time indulged in such act. He further said that prior to the first of July the girl's father had written to her to come to visit him in Nashville, Tennessee; that she did go and there remained until the last of July or the first of August.

This testimony was corroborated by the wife of accused, who fixes the time of the daughter's departure about June 21, and by Mrs. Allie Taylor (no relation) who said she had seen the letter from her father prior to June 23, about the time she left, and that she did not return until the latter part of July. Following the evidence, counsel for defendant read to the jury a portion of an affidavit filed by him in support of his motion for continuance, which was in substance to the effect, that if the girl was present and sworn as a witness, she would truly state that ''Jim Taylor had not had sexual intercourse with her at the time stated or on any occasion; that on the occasion defendant was accused of having sexual intercouse with her the defendant had no opportunity to have intercouse with her.'' The record does not show a renewal of the motion for directed verdict at the close of the evidence, but this fact is not material to our consideration of the alleged errors upon which reliance is had for a reversal.

Counsel insists that the court erroneously overruled demurrer to the indictment because it was faulty in two respects: (1) that after laying the accusation the descriptive portion failed to fix a definite date. Secondly, that the bill failed to charge that the alleged act was committed with the consent of Ethelda Neace.

Neither ground is of merit. Section 129, Criminal Code of Practice, provides:

''The statement in the indictment, as to the time at which the offense was committed, is not material further than as a statement that it was committed before the time of finding of the indictment, unless the time be a material ingredient in the offense.''

In felony cases there is no bar by limitation. We have frequently held that where there was a failure to fix definitely the date of the alleged offense, there was no error if it be alleged that it was committed before the finding of the indictment, as was specifically stated in the instant bill. Evitts v. Com., 257 Ky. 586, 78 S. W. (2d)

798; Com. v. Dickerson, 258 Ky. 446, 80 S. W. (2d) 540; Wolfe v. Com., 281 Ky. 301, 135 S. W. (2d) 896. The Dickerson ·case not only cites prior opinions construing the Code section, supra, but points out distinctions in indictments in felony and misdemeanor cases, and cases where there must be a more specific statement of time, because of certain statutes. Garrison v. Com., 243 Ky. 253, 47 S. W. (2d) 1028. The second objection to the indictment may be answered by a reference to Frierson v. Com., 175 Ky. 684, 194 S. W. 914, and Morgan v. Com., 222 Ky. 742, 2 S. W. (2d) 370, 372, in which we said: Whether she consented or resisted is immaterial.''

The case was called on March 12, 1942, and appellant filed a motion for continuance supported by affidavit. The general tenor is to the effect that appellant had been for three months prior to the trial physically unable to prepare for trial or consult with counsel looking to preparation. It was shown that appellant had seen service in World War 1; that while in France he had been shot through the body, the bullet lodging in the spine, and had not been removed; that he had twice been gassed, which caused serious throat trouble, and interferred with his speech; that he had been confined to a hospital in Bowling Green, ''the last time'' until about March 1st, but that his injuries were still causing much discomfort, and due to this condition he was neither physically able in the meantime to attend to any business or to go into the trial at the time set. He stated that the girl was a material and necessary witness in his behalf, and that while she was in the jurisdiction of the court, she was not present to testify; that on March 2, ten days before trial, a subpoena for her attendance had been issued to Butler County; that at the time he did not know she did not live in Butler County, but was located in the nearby county of Todd. He insisted that if granted a continuance for that purpose he would secure her attendance.

In this affidavit he alleged that if Ethelda Neace were present in court and duly sworn, she would truly testify in substance as is set out supra. A close analysis of this affidavit shows some lack of proper diligence, or comformity to the rather strict rules we have applied in cases wherein we have held that the court did not abuse discretion in holding the showing made not to authorize a continuance. We are of the opinion that so much

of the affidavit as based continuance on the ground that appellant was too enfeebled to appear at the trial was not sufficient.

The question of diligence as to procurement of the witness is fraught with some doubt, and presents to our minds a rather peculiar situation, which as we have observed has rarely ever occurred in a trial on a serious sexual charge, that is that the injured witness whose testimony is usually considered essential was not produced. We have observed the indictment, and it bears the names of no grand jury witnesses, as is directed by Section 120 of the Criminal Code of Practices; however, there was no objection to the indictment on this ground. The subpoena issued for commonwealth's witnesses contained only the names of Embry and his wife. The record shows that on March 2, 1942, the clerk of the court issued subpoena for six witnesses, one of whom was Ethelda Neace, and as to her, indorsed "not found."

This process was issued for defense witnesses. The affidavit indefinitely seems to make it appear that "immediately thereafter" accused was sent or went to the hospital in Bowling Green, which if true might account for lack of diligence in having subpoena issued to the neighboring county. It is true that the affidavit was read to the jury as the deposition of the absent witness, and we have ruled in construing Section 189 of the Criminal Code of Practice, that where this was done the court did not abuse discrertion in denying continuance. See Notes to Section 189. That section, after laying down the prerequisites, and providing that the affidavit may be read as the deposition of the witness, reads:

> "Provided, however, the court may, when, from the nature of the case, it shall be of opinion that the ends of justice require it, grant a continuance, unless the attorney for the Commonwealth will admit the truth of the matter which it is alleged in the affidavit such absent witness or witnesses would testify to."

There was no admonition, which would have been unnecessary if the court should have considered the situation to justify a continuance. In view of the fact that we have concluded that the case must be reversed, it is not necessary to discuss further the question presented, though we are inclined to the opinion that the nature of the case, and the situation presented was such that the

court should have granted continuance to such time as would have procured the witness from a nearby county. We say this in view of the fact that there appears on the record no evidence of an effort of the Commonwealth to obtain the presence of a material and ordinarily necessary witness, nor is there shown any reason why no such effort was made. Here was a witness who by answer to a single question could have determined the issue. The Commonwealth in the furtherance of justice should have made effort to produce this material witness.

The last charge of error is the misconduct of the prosecuting attorney in his closing argument, a portion of which was taken down by the reporter and is incorporated in the bill of exceptions. During his argument the officer said:

> "They tell you that this man was in the World War and was gassed—let me tell you that the gas that is hurting Jim Taylor came from barley corn and not from the World War, it is that that makes him the lowest down man on the streets of Morgantown. It was this that he was drunk on and that made him commit that crime. He might at one time have been a good citizen, but you can make a poor citizen out of liquor, and that is the kind of red blooded man you have here today. That is the kind of man that committed this low down crime that goes with the low down beast of the field. He has not done anything but drink liquor since the day he got out of the war."

The only evidence in the entire record as to drunkenness was the statement of James Embry, and another witness, to the effect that Taylor on the occasion appeared to be "half drunk," and "I thought he was drinking. I couldn't say drunk." There was also reference to the absence of the stepdaughter, which may have been misconstrued, and reference to the evidence of Mrs. Taylor, and a strong inference, if not a charge, that she had perjured herself in her husband's behalf, when her reputation was not impeached. This and some other portions of the argument are very near the danger line, but there were no objections, as there were in the first instances mentioned. While the language as to the absence of the girl might be taken by the jury to have had reference to her being in Nashville at the time of the alleged act, under the state of case here, where she was not produced,

the jury might have construed the language "she is more conveniently gone than anybody I ever saw in my life," to refer to her absence during trial.

There can be little doubt that the closing remarks were calculated to prejudice the jury to some extent, and it is not difficult to conclude that the members, or some of them, were prejudiced by the argument which traveled out the record, and was more or less inflammatory. All the more prejudicial when we are inclined to the view that the evidence was not of the character ordinarily brought forward in cases of this nature, in all of which we have reviewed, the charge was bolstered by the evidence of the injured party, or chief prosecuting witness. Section 340 of the Criminal Code of Practice provides that a new trial may be granted if a verdict has been rendered against a defendant by which his substantial rights have been prejudiced, or if from any cause the court be of the opinion that he has not received a fair and impartial trial. We are constrained to apply that section and hold that the court should have granted a new trial because of the prejudicial remarks in argument, and denying continuance.

Judgment reversed for new trial consistent herewith.